**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

In Re:                          )
                                   )
ANGEL MEDICAL SYSTEMS, INC.,     )           Chapter 11
a Delaware corporation,               )           Case No. 18-12903 (   )
                                     )
          Debtor. [1]                )
_____)

**DEBTOR'S MOTION FOR ENTRY OF ORDER (A) SCHEDULING COMBINED HEARING TO CONSIDER APPROVAL OF PLAN AND DISCLOSURE STATEMENT; (B) ESTABLISHING DEADLINE FOR OBJECTIONS TO PLAN AND DISCLOSURE STATEMENT; (C) APPROVING SOLICITATION PROCEDURES; (D) APPROVING CONFIRMATION HEARING NOTICE; AND (E) GRANTING RELATED RELIEF**

Angel Medical Systems, Inc., the above-captioned debtor and debtor in possession ("Debtor") hereby moves this Court (this "Motion") for the entry of an order: (i) scheduling a combined hearing (the "Confirmation Hearing") to consider approval of (a) the _Amended Disclosure Statement for the Prepackaged Plan of Reorganization for Angel Medical Systems, Inc., et al., Under Chapter 11 of the Bankruptcy Code,_ dated December 26, 2018 (as may be amended, the "Disclosure Statement") and (b) the _Amended Prepackaged Plan of Reorganization for Angel Medical Systems, Inc.,_ dated December 26, 2018 (as may be amended, the "Plan"); (ii) establishing deadlines and procedures to object to the same; (iii) approving the solicitation procedures used to solicit acceptances of the Plan (the "Solicitation Procedures") and the Solicitation Package (as defined below); (iv) approving the form and manner of notice of the confirmation hearing on the Plan and commencement of these cases (the "Confirmation Hearing Notice"); and (v) granting related relief, and in support of this Motion, the Debtor respectfully

_____

[1] The Debtor's address is 40 Christopher Way, Suite 201, Eatontown, NJ 07724.  Its EIN is 52-2360129.

states as follows:

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

### A.  General Background

4.      The Debtor is a privately held pre-commercial medical device company with approximately fifty issued patents.  The Debtor has developed the AngelMed Guardian System, which is an implantable cardiac monitoring and alerting system that is designed to warn cardiac patients of potentially life-threatening acute coronary syndromes ("ACS"), including heart attacks. It is well known that getting early treatment for heart attacks is extremely beneficial and potentially life-saving.  In a five year clinical study, the AngelMed Guardian System demonstrated that the warning provided by it provides a more accurate and earlier indication of ACS than a patient relying on symptoms alone and can materially shorten the time between the commencement of an

incident to Emergency Room arrival.  On April 9, 2018, the Food and Drug Administration approved the Debtor's Pre-Market Approval submission and approved the commercialization of the AngelMed Guardian System.  The FDA approved indication for use (IFU) allow the AngelMed Guardian System to be prescribed for patients with a prior ACS event at high risk for another one. More than two million Americans would qualify today based in this IFU.  The FDA in its summary of safety and efficacy states "An important consideration is that the device fills an unmet medical need by providing more effective diagnosis of a life-threatening condition comparted to relying on patient symptoms alone."  Other than for liquidity constraints arising from the pending debt maturities discussed below, the Debtor believes that it is poised to successfully launch into the commercial stage of its operations in 2019.

5.       Specifically, prior to the Petition Date, the Debtor issued three tranches of secured debt.  Pursuant to a Note Purchase and Security Agreement, dated as of December 5, 2012 (as amended), by and among the Debtor, as the borrower, Bioinfo Accelerator Fund, LLC, as agent, and the noteholders party thereto, the Debtor issued certain secured notes (the "2012 Notes").  As of the Petition Date, $20,646,000 in aggregate unpaid principal, plus interest, fees and other expenses, is outstanding under the 2012 Notes.

6.       Pursuant to a Note Purchase and Security Agreement, dated as of November 25, 2014 (as amended), by and among the Debtor, as the borrower, Bioinfo Accelerator Fund, LLC, as agent, and the noteholders party thereto, the Debtor issued an additional series of secured notes (the "2014 Notes").  As of the Petition Date, $20,430,000 in aggregate unpaid principal, plus interest, fees and other expenses, is outstanding under the 2014 Notes.

7.       Further, pursuant to a Note Purchase and Security Agreement, dated as of September 20, 2016 (as amended), by and among the Debtor, as the borrower, Bioinfo Accelerator

Fund, LLC, as agent, and the noteholders party thereto, the Debtor issued a third series of secured notes (the "2016 Notes").  As of the Petition Date, $1,956,442 in aggregate unpaid principal, plus interest, fees and other expenses, is outstanding under the 2016 Notes.

8.      Each of the 2012 Notes, the 2014 Notes and the 2016 Notes is secured by security interests in and liens on substantially all of the assets of the Debtor, excluding intellectual property. As is common with start-up entities, there is a material overlap in the holders of these pre-petition Notes and the holders of equity interests in the Debtor, including by insiders.

9.       All of the 2012 Notes, the 2014 Notes and the 2016 Notes mature on December 31, 2018.

10.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee or examiner has been appointed in this chapter 11 case.

11.     Additional factual background relating to the Debtor's business and the commencement of this chapter 11 case is set forth in detail in the *Declaration of Andrew Taylor in Support of Chapter 11 Petition and First Day Relief* (the *"*First Day Declaration") filed contemporaneously herewith.

**B.  Prepetition Solicitation**

12.     On December 17, 2018, the Debtor served out a form of plan and disclosure statement to holders of the 2012 Notes, the 2014 Notes, and the 2016 Notes, together with ballots, to solicit votes to accept or reject its prepackaged Plan (the "Solicitation").   The deadline for submitting ballots was January 3, 2019.  To address some minor changes to the Series A Offering (as defined in the Plan) and other non-material comments, the Debtor distributed the amended Plan

and Disclosure Statement on December 26, 2018 and extended the voting deadline until January 14, 2019.  Below is a summary of the classification and treatment of classified claims and equity interests under the Plan:

| Description And Amount Of Claims Or Interests | Summary Of Treatment |
|---|---|
| **Class 1 – Non-Tax Priority Claims**<br><br>Estimated Recovery:  100% | Paid in full in cash. |
| **Class 2 – Other Secured Claims**<br><br>Estimated Recovery:    100% | At the Debtor's option: (a) paid in full in cash; (b) the holder of Claim will receive the collateral securing its Claim; or (c) the Claim will be Reinstated or otherwise treated in a manner to render it unimpaired. |
| **Class 3 – 2012 Secured Notes Claims**<br><br>Estimated Recovery:  12% | Each Holder will receive its pro rata share of the Junior Noteholder New Common Stock Allocation. |
| **Class 4 – 2014 Secured Notes Claims**<br><br>Estimated Recovery:  12% | Each Holder will receive its pro rata share of the Junior Noteholder New Common Stock Allocation. |
| **Class 5 – 2016 Secured Notes Claims**<br><br>Estimated Recovery  100% | Each Holder will receive its pro rata share of the Senior Noteholder New Series A Preferred Stock Allocation. |
| **Class 6 – General Unsecured Claims**<br><br>Estimated Recovery:  up to 100%, subject to dilution for unknown unliquidated, disputed, and contingent claims | Each Holder of an Allowed General Unsecured Claim shall receive its pro rata share of $500,000; provided, that, no Holder of a General Unsecured Claim shall be entitled to receive more than the amount of its Allowed Claim. |

| Description And Amount Of Claims Or Interests | Summary Of Treatment |
|---|---|
| **Class 7 – Convenience Claims**<br><br>Estimated Recovery:  100% | Each Holder of an Allowed Convenience Claim shall be paid in full in Cash on the Effective Date up to $7,500. |
| **Class 8 – Old Equity Interests**<br><br>Estimated Recovery: 0% | On the Effective Date, all Old Equity Interests shall be cancelled and Holders of Old Equity Interests and Claims arising from or related to Old Equity Interests that are subject to subordination under section 510(b) of the Bankruptcy Code shall not receive or retain any property on account thereof. |

13.    The Debtor solicited holders of 2012 Secured Notes Claims ("Class 3"), 2014 Secured Notes Claims ("Class 4"), and 2016 Secured Notes Claims ("Class 5") which are the only classes entitled to vote under the Plan (the "Voting Classes").   The other classes are either unimpaired (Class 1 – Non-Tax Priority Claims, Class 2 – Other Secured Claims, and Class 7 – Convenience Claims), or presumed to have rejected the Plan (Class 6 – General Unsecured Claims and Class 8 – Old Equity Interests).  The Debtor established January 3, 2019 as the initial deadline to vote on the Plan, and has extended that deadline to January 14, 2019 (the "Voting Deadline"). Under Section 1125(g) of the Bankruptcy Code, the Debtor will continue to accept votes on the Plan based on the pre-petition Solicitation.

### Relief Requested

14.    By this Motion, the Debtor respectfully requests entry of an order (the "Scheduling Order"): (i) scheduling the Confirmation Hearing to consider approval of the Plan and Disclosure Statement; (ii) establishing deadlines and procedures to object to the same; (iii) approving the

Solicitation Procedures and the Solicitation Package; and (iv) approving the form and manner of

the Confirmation Hearing Notice.

15.     Below is a table highlighting the dates relevant to the Solicitation Procedures and

setting forth the Debtor's proposed dates for the mailing of the Confirmation Hearing Notice, the

Confirmation Hearing, and the Objection Deadline (as defined below):

| Relevant Event | Date |
|---|---|
| Record Date for Voting | December 14, 2018 |
| Commencement of Solicitation | December 17, 2018 |
| Voting Deadline | January 14, 2019 |
| Mail Confirmation Hearing Notice | January 15, 2019 (proposed) |
| Objection Deadline | February 5, 2019 (proposed) |
| Deadline for filing 3018 Motions | February 11, 2019 (proposed) |
| Reply Deadline | February 11, 2019 (proposed) |
| Disclosure Statement and Confirmation Hearing | February 18, 2019 (proposed) |

**Basis for Relief**

**A.  Scheduling Confirmation Hearing**

16.     The Debtor has solicited acceptance of the Plan from holders of claims in the

Voting Classes prior to the commencement of its bankruptcy case.  As a result, the Debtor requests

a single combined hearing (i.e., the Confirmation Hearing), to seek the Court's approval of the

Disclosure Statement and confirmation of the Plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing

the Court to combine the hearing on approval of the Disclosure Statement with the Confirmation

Hearing); 11 U.S.C. § 1128(a) (providing that, after notice, the Court shall hold a hearing on confirmation).

17.    The Debtor respectfully requests that the Court schedule the Confirmation Hearing on a date and time convenient for the Court but preferably consistent with the timeline set forth above and set a date of approximately 28 days from service of notice of the Confirmation Hearing as the deadline to object to the Plan (the "Objection Deadline"). *See* Fed. R. Bankr. P. 2002(b) and 3017.

**B.  Approval of Form and Manner of Notice of Conformation Hearing Procedures for Filing Objections and Scheduling Objection Deadline**

18.    The Debtor requests approval of the notice of the Confirmation Hearing substantially in the form of **Exhibit A** annexed hereto (the "Confirmation Hearing Notice"). Pursuant to Bankruptcy Rules 2002 and 3017(d), the Confirmation Hearing Notice contains: (a) the Petition Date; (b) notice of implementation of the automatic stay pursuant to Bankruptcy Code section 362; (c) the proposed date of the Confirmation Hearing; (d) a brief summary of the Plan; (e) the proposed Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; (f) the deadline for filing a motion pursuant to Bankruptcy Rule 3018 to temporarily allow a claim for voting purposes; and (g) directions on how to obtain copies of those documents at no charge upon request by any parties in interest.

19.    The Confirmation Hearing Notice will be served upon: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the Debtor's known creditors on its creditor matrix, including, among others, all of its trade creditors, taxing authorities, any governmental authority with whom the company conducts business, UCC-1 lien holders, other secured creditors, litigants, and counterparties to contracts; (c) the Securities and Exchange

Commission; (d) the Internal Revenue Service; (e) holders of equity interests; and (f) any party requesting notice pursuant to Bankruptcy Rule 2002.

### C. Procedures for Filing Objections to the Disclosure Statement and Confirmation of the Plan

20.    The Debtor requests that the Court direct the manner in which objections to confirmation of the Plan (including objections to the Disclosure Statement), if any, must be made.

21.    Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Debtor requests that the Court direct that all objections to the Plan be filed by the Objection Deadline as provided herein (unless otherwise agreed-to by the Debtor in its sole discretion). The Debtor's proposed schedule would provide entities at least 28 days' notice of the Objection Deadline.

22.    In addition, the Debtor requests that the Court require that objections to the Disclosure Statement and confirmation of the Plan must:

    a.    be in writing;

    b.    comply with the Bankruptcy Rules and the Local Rules;

    c.    state the name and address of the objecting party and the amount and nature of the claim or equity interest beneficially owned by such entity;

    d.    state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objection; and

    e.    be filed with the Clerk of the Court with proof of service thereof and served upon (i) the Debtor, Angel Medical Systems, Inc., 40 Christopher Way, Suite 201, Eatontown, NJ  7724 (Attn: David R. Fischell); (ii) proposed counsel for the Debtor, (a) Honigman Miller Schwartz And Cohn LLP, 2290 First National Building, 660 Woodward Avenue, Detroit, Michigan  48226-3506, (Attn.: Joseph Sgroi and Glenn Walter); and (b) Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801-1494, (Attn: Jeffrey R. Waxman); (iii) the Office of the United State Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801; and (iv)  those parties who have a filed a notice of appearance in the Chapter 11 Case.

23.     The Debtor believes that the proposed timing for filing and service of objections and proposed Plan modifications, if any, will afford the Court, the Debtor and other parties-in-interest sufficient time to consider objections and proposed Plan modifications, if any, prior to the Confirmation Hearing.

### D.  Approval of Solicitation Procedures

24.     Pursuant to section 1125(g) of the Bankruptcy Code, the Debtor distributed the Disclosure Statement and initiated solicitation of the Plan on December 17, 2018, prior to the commencement of this chapter 11 case. *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions). Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purposes of soliciting their votes to accept or reject a plan of reorganization. Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by Bankruptcy Rule 3017(d) to beneficial holders of stock, bonds, debentures, notes and other securities, determine the adequacy of such procedures and enter such orders as the court deems appropriate." Fed. R. Bankr. P. 3017(e). As set forth herein, the Solicitation Procedures comply with the Bankruptcy Code and the Bankruptcy Rules.

*(1)     Record Date*

25.     Bankruptcy Rule 3018(b) provides that the "holders of record of the applicable security" of the Debtors entitled to receive Ballots, as defined below, and the related solicitation materials are determined "on the date specified in the solicitation." The Solicitation Package clearly identified December 14, 2018 as the record date (the "<u>Voting Record Date</u>") for determining which holders of claims were entitled to vote to accept or reject the Plan. Accordingly, the Debtor's designation of the Voting Record Date conforms to the appropriate Bankruptcy Rule.

*(2)     Approval of Voting Deadlines*

10

26.     Section 1125(g) of the Bankruptcy Code provides that "[n]otwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law." 11 U.S.C. § 1125(g). Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims or interests in each solicited class and the time for voting was not unreasonably short.  All holders of Claims in the Voting Classes as of the Voting Record Date received a Solicitation Package.

27.     The Debtor initially commenced the solicitation of votes for approval of the Plan on December 17, 2018 with a deadline of January 3, 2019. After modifying the Plan, the Debtor served the amended Plan and Disclosure Statement to creditors holding claims in Classes 3, 4, and 5 and extended the Voting Deadline until 4:00 p.m. (prevailing Eastern Time) on January 14, 2019.

28.     The Ballots stated in clear and conspicuous language that all Ballots must be properly executed, completed, and delivered to Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801-1494, (Attn: Jeffrey Waxman, Balloting Agent), so that they were actually received by the Voting Deadline.

29.     The Voting Deadline is in accordance with applicable non-bankruptcy law, as there is no applicable federal securities law regarding the time period for solicitation of votes on a plan of reorganization. *See* 5 Collier Guide to Chapter 11 ¶ 5.07[c] (stating that whether a period is sufficient for a decision to vote on a prepackaged plan "was not a question addressed by the securities laws") (citing *In re Southland Corp.*, No. 390-37119-HCA-11 (Bankr. N.D. Tex. Oct. 24, 1990) (Response of the Securities and Exchange Commission to the Court's Request for a

Statement of Position Regarding Compliance of Debtors' Prepetition Solicitation with Federal Securities Laws, dated December 26, 1990, at 18)).

30.     The Debtor respectfully submits that each holder of a claim entitled to vote to accept or reject the Plan, *i.e.,* holders of claims in Class 3, Class 4 and Class 5, had adequate time to consider the Plan and Disclosure Statement based on the 28 day voting period.  The Debtor submits that the voting period provided by the Solicitation Procedures was reasonable and sufficient under the facts and circumstances of this chapter 11 case and should be approved.

**E.  Approval of Solicitation Package**

31.     The Debtor caused a solicitation package (the "Solicitation Package") containing the Disclosure Statement, the Plan (attached as Exhibit A to the Disclosure Statement), Ballot(s), a transmittal memorandum, and other Plan-related documents (as noted in the transmittal memorandum) to be mailed to holders of the Voting Class claims on December 17, 2018.  To address some changes to the Series A Offering and other non-material comments, the Debtor distributed the amended Plan and Disclosure Statement on December 26, 2018.

32.     Bankruptcy Rule 3017(d) requires the Debtor to transmit a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtor distributed to creditors one or more ballots in the form of **Exhibit B** annexed hereto (collectively, the "Ballots").  The Ballots contain a provision allowing Voting Classes to opt-out of the releases set forth in Article X of the Plan which are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. The forms for the Ballots are based on Official Form No. 14, but have been modified to address the particular circumstances of the case and to include certain additional information that the Debtor believes to be relevant and appropriate to the Voting Classes to vote to accept or reject the Plan.  *See* Fed. R. Bankr. P. 3017(d).

33.     Such holders were instructed to return their Ballots to the address specified on the Ballot and as described more fully below.  No other known holders of claims or interests were provided with a Solicitation Package. Such holders of known claims or interests either are unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and thus, not entitled to vote.

**F.   Notice of Non-Voting Status**

34.     Class 1 (Non-Tax Priority Claims), Class 2 (Other Secured Claims), and Class 7 (Convenience Claims) are unimpaired under the Plan and therefore are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 6 (General Unsecured Claims) and Class 8 (Old Equity Interests) are deemed to reject the Plan. Therefore, the Debtor requests that it not be required to solicit the foregoing Classes (the "Non-Voting Classes") and no Ballots have been proposed for, or sent to, holders of claims or interests in these classes.

35.     Pursuant to section 1126(f) of the Bankruptcy Code, unimpaired creditors are "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required." 11 U.S.C. § 1126(f). Accordingly, the Debtor submits that it need not transmit a Solicitation Package to holders of Claims in the Unimpaired Classes who are deemed to have accepted the Plan.

36.     Pursuant to section 1126(g) of the Bankruptcy Code, "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g). Therefore, the Debtor requests that it not be required to transmit Solicitation Packages to holders of Class 8 (Old Equity Interests) as holders of Old

Equity Interests will not receive any distribution or retain any property under the Plan and are therefore deemed to have rejected the Plan.

37.     Because of the inherent difficulty in soliciting general unsecured trade creditors as part of a prepackaged plan prior to the commencement of a bankruptcy case, the Debtor elected to treat holders of Class 6 (General Unsecured Claims) as having rejected the plan, even though they are impaired and receiving a distribution under the case.  Nothing in the Bankruptcy Code prohibits a plan proponent from deeming a class to reject a plan of reorganization in circumstances such as those presented here, and courts in this district have granted similar relief.  *See, e.g., In re General Wireless Operations Inc.*, Case No. 17-10506 (BLS), (Bankr. D. Del. Sept. 7, 2017) (permitting debtors to not solicit votes from class deemed to reject plan); *In re Terisa Systems, Inc.*, Case No. 08-10462 (CSS), (Bankr. D. Del. Mar. 13, 2008) (holding the debtors were not required to undertake an otherwise costly and ultimately wasteful solicitation so long as such holders of claims were provided an opportunity to object to confirmation of the Plan); *In re Globix Corp.*, Case No. 02-10647 (PJW) (Bankr. D. Del. Mar. 6, 2002) (same); *In re Tokheim Corp.*, Case No. 00-03455 (PJW) (Bankr. D. Del. Aug. 30, 2000) (same); *In re Philip Servs., Inc.*, Case No. 99-02385 (MFW) (Bankr. D. Del. Sept. 21, 1999) (same); *In re The Grand Union Co.*, Case No. 98-27912 (NLW) (Bankr. D.N.J. June 24, 1998) (same).

38.     Moreover, the results from a solicitation of votes from the holders of Class 6 (General Unsecured Claims) would be irrelevant since a rejection of the Plan by holders of Class 6 would not change the ultimate outcome of the solicitation process. Assuming, arguendo, that the holders of Class 6 rejected the Plan, the Debtor contends that the Plan is nevertheless confirmable over their rejection pursuant to the cram-down provisions of Section 1129(b) of the Bankruptcy Code.  *See In re Regent Communications, Inc.*, 2010 WL 6982121 (Bankr. D. Del. Mar. 1, 2010)

(holding holders of equity interests were deemed to have rejected the Plan and finding that the Debtors were not required to solicit votes on the Plan from such holders); *see also In re PWS Holding Corp.*, 228 F.3d 224, 231-232 (3d Cir. 2000) (acknowledging holders without interest deemed to reject reorganization plans); *In re Egan*, 142 B.R. 730, 733 (Bankr. E.D. Pa. 1992) (permitting the debtors not to resolicit a class previously deemed to reject the debtor's original plan but receiving a nominal distribution under the debtor's revised plan); *In re Union County Wholesale Tobacco & Candy Co.*, 8 B.R. 442, 443 (Bankr. D.N.J. 1981) (holding that the debtor need not solicit the classes subject to cramdown treatment nor provide the members of such classes with a disclosure statement).

39.     Therefore, the Debtor requests that it not be required to transmit Solicitation Packages to holders of Claims in Class 1 (Non-Tax Priority Claims), Class 2 (Other Secured Claims), Class 6 (General Unsecured Claims), Class 7 (Convenience Claims) and Class 8 (Old Equity Interests)

40.     The Debtor proposes to mail or cause to be mailed to holders of claims in the Non-Voting Classes, at the address to which notices are required to be sent pursuant to Bankruptcy Rule 2002(g), a notice of Non-Voting Status substantially in the form of **Exhibit C** annexed hereto (the "Non-Voting Status Notice") and a Confirmation Hearing Notice.

41.     The Non-Voting Status Notice will inform the recipient that it is in a Non-Voting Class and will indicate that Non-Voting Parties may obtain a copy of the Plan and Disclosure Statement free of charge. The Non-Voting Notices will also include an Opt-Out Form, permitting the Non-Voting Parties to opt-out of the third-party releases set forth in Article X of the Plan.

### G. Approval Procedures for Vote Tabulation

42.     The Debtor requests that the Court approve the following vote tabulation methodology to be utilized by the Debtor (the "Tabulation Procedures"):

a.    The voting amount of claims in each Voting Class (for voting purposes only) shall be established based on the principal amount of notes held by such holder as of the Voting Record Date, as evidenced by the Debtor's records.

b.    The Debtor's proposed counsel, Morris James, LLP,  will serve as balloting agent for the Debtor, and will not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots: (i) any Ballot that was received after the Voting Deadline (unless the Debtor granted an extension of the Voting Deadline with respect to the holder who cast the Ballot or otherwise agreed to waive the timeliness requirement); (ii) any Ballot that was illegible or contained insufficient information to permit the identification of the holder; (iii) any Ballot cast by a person or entity that does not hold a claim or interest in a class that is entitled to vote on the Plan; (iv) any unsigned Ballot; (v) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and (vi) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

c.    The amount of claims voted by such holders of the Voting Classes will be verified by submitting a summary report to the Debtor to verify that the claim amount identified by each holder corresponded to obligations actually held by such holder as of the Record Date.  In the event such amounts differed and could not be reconciled, votes will be based on the amounts of claims held by such holder as provided by the Debtor.

43.    Bankruptcy Rule 3018(a) provides that "the court after notice and hearing may temporarily allow the claim . . . in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

44.    The Debtor believes that the Tabulation Procedures will establish a fair and equitable voting process.[2]  Nevertheless, if any claimant seeks to challenge the allowance of its claim for voting purposes in accordance with the Tabulation Rules, the Debtor proposes that such claimant be required to file a motion, pursuant to Bankruptcy Rule 3018(a), for an order

---

[2] Nothing herein or in the Tabulation Procedures is intended to waive or limit the Debtor's rights, pursuant to section 1126(e) of the Bankruptcy Code, to request that the Court designate any Ballot or Ballots as not being cast in good faith.

temporarily allowing such claim in a different amount for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") and serve such motion on the Debtor so that it is received on or before 5:00 p.m. (prevailing Eastern time) on the later of (a) seven days prior to the Confirmation Hearing and (b) the fifth business day after the Debtor files an objection to such claimant's claim.

45.     Such motion will, to the extent necessary, be heard at the Confirmation Hearing. In accordance with Bankruptcy Rule 3018, the Debtor further proposes that any Ballot submitted by a creditor that files a Rule 3018 Motion will be counted solely in accordance with the proposed Tabulation Rules and the other applicable procedures contained herein (and the notices attached hereto) unless and until the underlying claim is temporarily allowed by the Bankruptcy Court for voting purposes in a different amount, after notice and a hearing. Procedures similar to the above-described Solicitation Procedures have been approved in other chapter 11 cases in this district. *See e.g.*, *In re Fallbrook Tech. Inc.*, No. 18-10384 (Docket No. 174) (MFW) (Bankr. D. Del. Apr. 24, 2018); *In re The Walking Co. Holdings, Inc.*, No. 18-10474 (Docket No. 256) (LSS) (Bankr. D. Del. Apr. 20, 2018); *In re Patriot Nat'l, Inc.*, No. 18-10189 (Docket No. 381) (KG) (Bankr. D. Del. Mar. 14, 2018); *In re True Religion Apparel, Inc.*, No. 17-11460 (Docket No. 387) (CSS) (Bankr. D. Del. Aug. 24, 2017); *In re RCS Capital Corp.*, No. 16-10223 (Docket No. 381) (MFW) (Bankr. D. Del. Mar. 24, 2016).

46.     The Debtor has not yet filed its official schedules in the Bankruptcy Case, however, the Debtor anticipates that it will do so within twenty days after the Petition Date.  In the event that it has, the Debtor reserves the right to amend the Schedules with respect to any Claim and to make distributions based on such amended Schedules (if no proof of claim is timely filed in response thereto) without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtor

in accordance with the orders of this Court establishing bar dates for filing Claims against the Debtor's estates will provide the holder of such claim with notice of such amendment, and such parties will have 30 days to file an objection to such amendment in the Bankruptcy Court.

47.     The Debtor also reserves the right to: (a) file, withdraw or litigate to judgment, objections to any claims; (b) settle or compromise any disputed claims without any further notice to or action, order or approval by this Court, subject to any orders of this Court establishing procedures for the settlement of certain claims; and (c) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court..

### H.  The Debtor's Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law

48.     Section1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if— (1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b). Thus, prepetition solicitation must comply with either generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under Section 1125 of the Bankruptcy Code. *See* 7 Alan N. Resnick & Henry J. Sommer, eds., *COLLIER ON BANKRUPTCY* ¶ 1126.03[2][d] (15th rev. ed.).

49.     The Debtor respectfully submits that its prepetition solicitation is sheltered under one or more of the exceptions from registration provided by the Securities Act of 1933, 15 U.S.C.

§§ 77a-77aa (as amended from time to time, the "Securities Act"), including section (4)(a)(2) or Regulation D promulgated thereof, exempting the Debtor's prepetition solicitation from the disclosure and registration requirements of the Securities Act, state "Blue Sky" laws, or any similar rules, regulations, or statutes. Section 4(a)(2) of the Securities Act or Regulation D promulgated thereof, in particular, creates an exemption from nonbankruptcy securities law for transactions not involving a "public offering." The Debtor believes the Solicitation did not constitute a public offering because the Debtor reasonably believes that all beneficial holders of claims in the Voting Classes are "Accredited Investors" as that term is used under the Securities Act. As such, the requirements under section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtor's prepetition Solicitation. As discussed more fully below, the Debtor will seek a determination from the Court at the Confirmation Hearing that all solicited Voting Class received "adequate information" as defined by section 1125(a) of the Bankruptcy Code in accordance with section 1126(b)(2) of the Bankruptcy Code.

## I.    Approval of the Disclosure Statement at the Confirmation Hearing

50.    The Debtor will request that, at the Combined Hearing, the Bankruptcy Court find that the Disclosure Statement contains adequate information as defined in section 1125 of the Bankruptcy Code.

51.    Section 1125(a) of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1). The primary purpose of a disclosure statement is to provide creditors and interest holders affected by a proposed plan with all material information necessary to make an informed decision about whether to vote to accept or reject such plan. *See, e.g.*, *Century Glove, Inc.* v. *First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."). Congress expected that such informed judgments would be necessary to both negotiating and voting on a plan of reorganization. *Century Glove*, 860 F.2d at 100. Courts will consider the particular facts and circumstances of each case in evaluating whether a disclosure statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code. 11 U.S.C. § 1125(a)(l) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records."); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."). The Debtor submits that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

52.    The Disclosure Statement is extensive and comprehensive. It contains descriptions and summaries of, among other things: (a) the material terms of the Plan; (b) certain events preceding and leading to the commencement of this chapter 11 case and negotiations regarding the Plan; (c) the claims asserted against the Debtor's estate; (d) transactions to be effectuated and securities to be issued under the Plan; (e) risk factors affecting the Plan; (f) a liquidation analysis setting forth the estimated return that holders of claims or interests would receive in a hypothetical chapter 7 case; (g) financial information that would be relevant to creditors' determinations of

whether to accept or reject the Plan; and (h) securities law and federal tax law consequences of the Plan.

53.    Accordingly, the Debtor submits that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

**J.  Confirmation of Plan**

54.    At the Combined Hearing, the Debtor will also request that the Court confirm the Plan pursuant to 1129 of the Bankruptcy Code. The Debtor belies that the Plan satisfies all of the requirements of confirmation under the Bankruptcy Code, and as such will request that an order confirming the Plan be entered.  Prior to the Combined Hearing, the Debtor will file a brief and / or affidavit in support of confirmation demonstrating that the Plan satisfies each requirement for confirmation and responding to an objections to confirmation.   Also prior to the Combined Hearing, the Debtor will submit to the Court a proposed form of Order (a) approving the adequacy of the Disclosure Statement and prepetition solicitation procedures and (b) confirming the Plan.

<u>**Waiver of Bankruptcy Rule 6004(a)**</u>

55.    To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a).

<u>**No Prior Request**</u>

56.    No prior motion for the relief requested herein has been made to this or any other Court. Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtor consents to the entry of a final judgment or order with respect to the Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**Notice**

57.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; and (ii) creditors included on any list filed under Fed. R. Bankr. P. 1007(d). Because the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests entry of an order: (i) scheduling the Confirmation Hearing to consider approval of the Plan and Disclosure Statement; (ii) establishing deadlines and procedures to object to the same; (iii) approving the Solicitation Procedures and the Solicitation Package; (iv) approving the form and manner of the Confirmation Hearing Notice; and (v) granting the Debtor such other and further relief as the Court deems just and proper.

Dated:  December 31, 2018                    **MORRIS JAMES LLP**

/s/ Jeffrey R. Waxman
Jeffrey R. Waxman (Bar No. 4159)
Eric J. Monzo (Bar No. 5214)
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494
Telephone:  (302) 888-5842
Facsimile:  (302) 504-3942
E-mail: jwaxman@morrisjames.com
E-mail: emonzo@morrisjames.com

-and-

HONIGMAN MILLER SCHWARTZ AND COHN
LLP
Joseph R. Sgroi, Esquire
Glenn S. Walter, Esquire
2290 First National Building
660 Woodward Avenue
Detroit, Michigan  48226-3506
Telephone:  (313) 465-7000
Facsimile:  (313) 465-7713
E-mail: jsgroi@honigman.com
E-mail: gwalter@honigman.com

Proposed Counsel to the Debtor