IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ANGEL MEDICAL SYSTEMS, INC., | ) | Chapter 11 |
| a Delaware corporation, | ) | Case No. 18-12903 (KG) |
| | ) | |
| Debtor.[1] | ) | |
| _____ | ) | Ref. Docket Nos. 7 & 20 |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO
OBTAIN POSTPETITION SECURED FINANCING, (II) AUTHORIZING
THE USE OF CASH COLLATERAL, (III) GRANTING LIENS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING
ADEQUATE PROTECTION, AND (V) MODIFYING THE AUTOMATIC STAY**

Upon the motion (the "**Motion**") [Docket No. 7] dated December 31, 2018 of

Angel Medical Systems, Inc., as debtor and debtor in possession (the "**Debtor**") in the

above-captioned chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 105, 361,

362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 507 of title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002,

4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**") and the corresponding local rules of this District (the "**Local Rules**"), requesting

entry of an interim order (the "**Interim Order**") and a Final Order (this "**Final Order**")

authorizing the Debtor to, among other things:

(i)     Obtain senior secured postpetition financing in an aggregate

principal amount not to exceed $2,500,000 (the "**DIP Facility**"), pursuant to the terms

and conditions of the DIP Documents (as defined below), the Interim Order, and this

Final Order;

---

[1] The Debtor's address is 40 Christopher Way, Suite 201, Eatontown, NJ 07724. Its EIN 52-2360129.
29735754.2
10688842/2

(ii)    Enter into (a) a Note Purchase and Secured Debtor-in-Possession Loan Agreement (the "**Note Purchase Agreement**"), substantially in the form attached as **Exhibit C** to the Motion, by and among the Debtor and the Purchasers parties thereto (the "**Purchasers**") and (b) the Notes and Escrow Agreement related to the DIP Facility (together with the Note Purchase Agreement, the "**DIP Documents**");

(iii)    Borrow, on an interim basis, pursuant to the DIP Documents and the Interim Order, postpetition financing in an aggregate principal amount of up to $600,000 (the "**Interim DIP Facility**");

(iv)    Borrow, on a final basis, pursuant to the DIP Documents and this Final Order, postpetition financing in an aggregate principal amount of up to $2,500,000, inclusive of amounts permitted to be borrowed pursuant to the Interim DIP Facility;

(v)    Execute and deliver the Note Purchase Agreement and the other DIP Documents and to issue the Notes to the Purchasers pursuant thereto;

(vi)    Grant to the Purchasers allowed superpriority administrative expense claims in the Chapter 11 Case and any Successor Case (as defined below) for the DIP Facility and all obligations of the Debtor owing under the DIP Documents (collectively, and including all "Obligations" of the Debtor as defined and described in the Note Purchase Agreement, the Notes and the other DIP Documents, the "**DIP Obligations**") subject to the priorities set forth in paragraph 2(i) below;

(vii)    Grant to the Collateral Agent, for the ratable benefit of the Purchasers, automatically perfected security interests in and liens on all of the Collateral (as defined below), including all property constituting "cash collateral" as defined in

section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), which liens shall be subject to the priorities set forth herein;

(viii)    Use the proceeds of the DIP Facility in accordance with the Note Purchase Agreement, the DIP Documents, the Interim Order and this Final Order, in all cases in accordance with the Budget (as defined in the Note Purchase Agreement), as amended, a copy of which is attached hereto as **Exhibit A**, and as otherwise provided in the DIP Documents;

(ix)    Use any prepetition collateral, including the Cash Collateral, and provide adequate protection to any parties that may have an interest in such prepetition collateral, including Cash Collateral, for any possible diminution in value of their interests therein;

(x)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Documents, the Interim Order and this Final Order;

(xi)    Schedule a final hearing (the "**Final Hearing**") to consider entry of this Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

(xii)    Waive, to the extent applicable, any stay of the immediate effectiveness of the Interim Order and this Final Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that the Interim Order and this Final Order shall be immediately effective upon entry on the Court's docket.

The Court having considered the Motion, the Declaration of Andrew Taylor in Support of Chapter 11 Petition and First Day Relief (the "**First Day Declaration**")

3

[Docket No. 8], the exhibits attached thereto, the proposed Note Purchase Agreement, and the evidence submitted or adduced and the arguments of counsel made at the January 4, 2019 hearing (the "**Interim Hearing**") on the Interim Order; the Interim Order having been entered [Docket No. 20]; notice of the Motion and the Final Hearing having been given in accordance with the Interim Order and Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; ~~the Final Hearing having been held and concluded;~~ *there being no objections;* it appearing that granting the relief requested in the Motion on a final basis is necessary to avoid immediate and irreparable harm to the Debtor, and is otherwise fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and is essential for the preservation of the value of the Debtor's property; all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

  **IT IS FOUND AND DETERMINED that[2]:**

  A. **Petition Date**. On December 31, 2018 (the "**Petition Date**"), the Debtor filed its voluntary petition under chapter 11 of the Bankruptcy Code with this Court [Docket No. 1].

  B. **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, and over the persons and property affected hereby. Venue for the Chapter 11 Case and proceedings

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution.

      C.    **Notice**. Notice of the Final Hearing and notice of the Motion has been given by the Debtor to (i) the parties having been given notice of the Interim Hearing; (ii) any party which has filed prior to such date a request for notices with this Court; (iii) counsel for the Committee (defined below), if any; (iv) the Office of the United States Trustee for the District of Delaware; (v) the United States Securities and Exchange Commission; (vi) the Office of the United States Attorney for the District of Delaware; (viii) the Internal Revenue Service; (ix) the Debtor's seventeen (17) largest unsecured creditors (excluding insiders); (x) the Collateral Agent for the Purchasers; and (xi) the Agent for each of the noteholders of Debtor's 2012 Notes, 2014 Notes and 2016 Notes; and by facsimile transmission, email, overnight courier and/or hand delivery. Under the circumstances, such notice of the Final Hearing and the Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), (c), and (d), and the Local Rules.

      D.    **Findings Regarding the DIP Facility**.

          (i)    **Need for DIP Facility and to Use Cash Collateral**. An immediate need exists for the Debtor to obtain funds pursuant to borrowings under the DIP Facility and to use Cash Collateral in order to continue operations, fund payroll and operating expenses, and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations through the DIP Facility and use of Cash Collateral is

5

vital to the preservation and maintenance of the going concern value of the Debtor's estate, to maximize the value of the Debtor's assets for the benefit of its creditors, and to avoid immediate and irreparable harm to the Debtor, its estate and its creditors.

(ii)    **Priming of any Prepetition Liens**. The priming of any existing liens on any of the Collateral, as contemplated by the DIP Documents and as further described below, is a condition to the Debtor's borrowings under the DIP Facility, which borrowing is necessary for the Debtor to be able to continue to operate its business for the benefit of its estate and creditors. Solely in the event and to the extent that there are obligations outstanding whose interests are primed, the parties holding such obligations are each entitled to receive adequate protection as set forth in paragraph 5 below pursuant to sections 361, 363, and 364 of the Bankruptcy Code for any diminution in value of each of their respective interests.

(iii)    **No Credit Available on More Favorable Terms**. The Debtor has been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, or (b) credit for money borrowed secured by a lien on property of the estate on more favorable terms and conditions than those provided in the Note Purchase Agreement and this Final Order. The Debtor is unable to obtain credit for borrowed money without granting to the Purchasers the DIP Protections (as defined below).

E.    **Section 506(c) Waiver**. The Debtor has waived the provisions of section 506(c) of the Bankruptcy Code as part of the DIP Facility. Further, no expenses of administration of the Chapter 11 Case or any Successor Case shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code, the

6

enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the Purchasers, and no consent shall be implied from any action, inaction or acquiescence by the Purchasers.

F.    **Use of Proceeds of the DIP Facility**. Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Documents) shall be used in a manner consistent with the terms and conditions of the Note Purchase Agreement and this Final Order and in accordance with the Budget.

G.    **Application of Proceeds of Collateral**. All proceeds of any sale or other disposition of the Collateral (as defined below), if any, shall be applied in accordance with the Budget and the terms and conditions of the DIP Documents.

H.    **Effect of Reversal; Good Faith**. The Purchasers have indicated a willingness to provide financing to the Debtor in accordance with the Note Purchase Agreement and this Final Order, provided that the DIP Obligations, DIP Liens and other protections granted by this Final Order and the DIP Documents will not be affected by any subsequent reversal or modification of this Final Order as provided in section 364(e) of the Bankruptcy Code. The Purchasers have acted in good faith in agreeing to provide the DIP Facility approved by this Final Order.

I.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business

judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)   the DIP Documents and use of Cash Collateral were negotiated in good faith and at arms' length between the Debtor and the Purchasers; and

(iii)   the DIP Facility loan proceeds to be obtained in exchange for issuance of the Notes and otherwise pursuant to the DIP Documents will be so advanced in good faith, and for valid business purposes and uses, as a consequence of which the Purchasers are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

(iv)   **Relief Essential; Best Interest; Good Cause**. Good cause has been show for the relief requested in the Motion (and as provided in this Final Order) and such relief is necessary, essential, and appropriate for the preservation of the Debtor's business and property. It is in the best interest of the Debtor's estate for the Debtor to be allowed to enter into and to perform under the DIP Facility, as contemplated by the terms of the Note Purchase Agreement and the other DIP Documents.

**NOW, THEREFORE,** based upon the foregoing findings, and upon consideration of the Motion and the record made before this Court with respect to the Motion, including the record created during the Final Hearing, and with the consent of the Debtor and the Purchasers to the form and entry of this Final Order, and good and sufficient cause appearing therefor, and the Court being otherwise fully advised in the premises;

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

10688842/2

1.    **Motion Granted**. The Motion is granted in accordance with the terms and conditions set forth in this Final Order and the Note Purchase Agreement. Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.    **DIP Documents**.

(a)    **Approval of Entry Into DIP Documents**. The Debtor is authorized to execute, deliver and perform in accordance with the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Documents and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Documents. The Debtor is hereby authorized to use Cash Collateral. The Debtor is hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the Note Purchase Agreement, the Notes and all other DIP Documents as such become due, including, without limitation, reasonable attorneys' fees and disbursements for services provided and costs incurred by the Collateral Agent as and to the extent provided for in the Note Purchase Agreement, which amounts shall not otherwise be subject to approval of this Court; *provided, however*, that prior to its entitlement to receipt of any cash payment from the Debtor on account thereof, the Collateral Agent shall deliver copies of summary professional fee and expense invoices to the Office of the United States Trustee for the District of Delaware and an official committee of unsecured creditors (if one is

9

appointed in the Chapter 11 Case) (the "**Committee**") on ten (10) days' notice at the same time such invoices are provided to the Debtor with a request for payment. If no objection is received by such parties during such ten (10) day period, then such amounts shall be payable by the Debtor without necessity of hearing or further order of the Court.

(b)    **Authorization to Borrow**. To enable the Debtor to continue to preserve the value of its estate and subject to the terms and conditions of this Final Order, upon the execution of the Note Purchase Agreement and the other DIP Documents and further subject to their terms, the Debtor is hereby authorized to borrow, pursuant to the DIP Facility, a principal amount not to exceed $2,500,000, inclusive of amounts borrowed pursuant to the Interim Order.

(c)    **Conditions Precedent**. The Purchasers shall have no obligation to make any loans under the Note Purchase Agreement unless the conditions precedent to making such loans under the Note Purchase Agreement have been satisfied in full or waived by the Purchasers in their sole discretion.

(d)    **DIP Liens**. Effective immediately upon the entry of this Final Order, on account of the DIP Facility, except with respect to the Carve-Out (as defined below), the Collateral Agent is hereby granted, for the ratable benefit of the Purchasers, first-priority postpetition security interests and liens (which shall immediately be valid, binding, permanent, continuing, enforceable and non-avoidable) on and against all assets and property of the Debtor, whether real or personal, tangible or intangible, including, without limitation, intellectual property, and including all proceeds, products, rents and profits, whether now owned or existing or hereafter acquired, owned, existing or arising and wherever located (as defined in the Note Purchase Agreement, the "**Collateral**"),

10

10688842/2

including, without limitation, the proceeds of the Debtor's claims and causes of action arising under sections 502(d), 544-549, 550 and 553 of the Bankruptcy Code (the "**Avoidance Actions**"), whether received through judgment, compromise and settlement, avoidance or otherwise (all such liens and security interests granted on or in the Collateral pursuant to the Interim Order, the DIP Documents and this Final Order (the "**DIP Liens**")):

(e)     Subject to the Carve-Out (as defined below), pursuant to section 364(c)(2) of the Bankruptcy Code, the Purchasers are hereby granted a perfected, first priority lien on all Collateral not otherwise subject to any valid, unavoidable, perfected liens and security interests.

(f)     **DIP Liens Priority**. The DIP Liens securing the DIP Obligations shall be junior and subordinate only to the Carve-Out (as defined below), and shall otherwise be senior in priority and superior to, and shall prime, any security interest, mortgage, collateral interest, lien or claim, of any kind or nature, on or to any of the Collateral. Other than as expressly set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter granted in the Chapter 11 Case. The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code (a "**Successor Case**"), or upon the dismissal of the Chapter 11 Case or Successor Case.

(g)     **Enforceable Obligations**. The DIP Documents shall constitute and evidence the valid and binding obligations of the Debtor, which obligations shall be

10688842/2

enforceable against the Debtor, its estate and any successors thereto and its creditors or representatives thereof, in accordance with their terms.

(h)    **Protection of Purchasers and Other Rights**. From and after the Petition Date, the Debtor shall use the proceeds of the DIP Facility only for the purposes specifically set forth in the Note Purchase Agreement and this Final Order and in strict compliance with the Budget (subject to any variances thereto that may be permitted by the Note Purchase Agreement or the Budget).

(i)    **Superpriority Administrative Claim Status**. Subject to the Carve-Out (as defined below), all DIP Obligations shall constitute an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority in the Chapter 11 Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code and pursuant to any other provision of the Bankruptcy Code except as otherwise set forth herein, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, subject to the Carve-Out (as defined below).

12

3.      **Authorization to Use Proceeds of DIP Facility and Cash Collateral**.
Pursuant to the terms and conditions of this Final Order, the Note Purchase Agreement
and the other DIP Documents, and in accordance with the Budget and any variances
thereto that may be permitted pursuant thereto or pursuant to the Note Purchase
Agreement, the Debtor is authorized to use the borrowings pursuant to the Note Purchase
Agreement and to use Cash Collateral during the period commencing immediately after
the entry of this Final Order and terminating upon the occurrence of an Event of Default
(as defined below) and the termination of the Note Purchase Agreement in accordance
with its terms and subject to the provisions hereof. The Debtor and the Purchasers may
agree in writing to modify the Budget in their discretion at any time that the DIP Facility
remains outstanding.

4.      **Postpetition Lien Perfection**. This Final Order (and the Interim Order)
shall be sufficient and conclusive evidence of the validity, perfection, and priority of the
DIP Liens without the necessity of filing or recording any financing statement, deed of
trust, mortgage, or other instrument or document which may otherwise be required under
the law of any jurisdiction or the taking of any other action (including, for the avoidance
of doubt, entering into any deposit account control agreement) to validate or perfect the
DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the
foregoing, the Collateral Agent, for the ratable benefit of the Purchasers, may, in its sole
discretion, file such financing statements, mortgages, notices of liens and other similar
documents, and is hereby granted relief from the automatic stay of section 362 of the
Bankruptcy Code in order to do so, and any and all of such financing statements,
mortgages, notices of lien and other documents shall be deemed to have been filed or

13

recorded at the time and on the date of the commencement of the Chapter 11 Case. At the request of the Collateral Agent, the Debtor shall execute and deliver to the Collateral Agent, for the ratable benefit of the Purchasers, all such financing statements, mortgages, notices and other documents as the Collateral Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens granted pursuant hereto. The Collateral Agent, in its discretion, may file a photocopy of this Final Order as a financing statement, mortgage or similar or other lien recording with any recording officer designated to file or record financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

5.      **Adequate Protection Liens**. Solely in the event and to the extent that the Debtor has obligations to any party that remain outstanding that are subject to valid, perfected and non-avoidable prepetition liens on the Debtor's property, such parties (each a "**Prepetition Lienholder**" and collectively the "**Prepetition Lienholders**") interests shall receive the following as adequate protection against any diminution in the value of such Prepetition Lienholder's interest caused by the imposition of the automatic stay: pursuant to sections 361 and 363(e) the Prepetition Lienholders are hereby granted continuing, valid, binding, enforceable, and perfected postpetition security interests in and replacement liens on the Pre-Petition Collateral (the "**Adequate Protection Liens**"). The Adequate Protection Liens shall be subject to the Carve-Out as set forth in this Final Order and shall otherwise be junior and subordinate, in all respects, to the DIP Liens.

14

The Adequate Protection Liens shall be senior to all security interests in, liens on, or claims against any of the Collateral other than the DIP Liens and the Carve-Out.

6.    **Carve Out**. Subject and subordinate to the Carve-Out (as defined below) in all respects, the DIP Obligations shall constitute allowed superpriority administrative expense claims and shall have priority over all other allowed Chapter 11 and Chapter 7 administrative expense claims, including expenses of a Chapter 11 and Chapter 7 trustee, under Sections 364(c)(1), 503(b), 507(a)(2) and 507(d) of the Bankruptcy Code. "**Carve-Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code (without regard to the notice set forth in (ii) below) (the "**U.S. Trustee Fees**"); (ii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise by the Court, all unpaid fees (including, without limitation, transaction fees paid upon the closing of the respective transaction but excluding success fees) and expenses (collectively, the "**Professional Fees**") accrued or incurred by persons or firms retained by the Debtor pursuant to Sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and any professionals (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") employed by the Committee, if the Committee one is appointed in the Chapter 11 Case pursuant to Sections 328 or 1103 of the Bankruptcy Code at any time on or prior to delivery by or on behalf of the Purchasers of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iii) the Professional Fees in an aggregate amount not to exceed $150,000.00 for amounts incurred after the date of delivery of the Carve-Out Trigger Notice, to the extent allowed at any time,

15

whether by interim order, procedural order, or otherwise by the Court (the amounts set forth in this clause (iii) being the **"Post-Carve-Out Trigger Notice Cap"**). **"Carve-Out Trigger Notice"** means a written notice delivered by email (or other electronic means) to the Debtor and its counsel, the United States Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an event of default under the Notes, stating that the Post-Carve-Out Trigger Notice Cap has been invoked. No portion of the Carve-Out, any cash collateral or proceeds of the Notes or any other amounts may be used for the payment of the fees and expenses of any person incurred in challenging, or in relation to the challenge of (i) the liens and/or claims of the Purchasers and the Collateral Agent, or the initiation or prosecution of any claim or action against any or all of the Collateral Agent and/or any or all of the Purchasers, including, without limitation, any claim under Chapter 5 of the Bankruptcy Code, and any other federal, state or foreign law, in respect of the Notes or (ii) any claims or causes of actions against any or all of the Collateral Agent and/or any or all of the Purchasers under the Notes and/or the Note Purchase Agreement and/or any or all of the other DIP Documents, their advisors, professionals, agents and sub-agents, including formal discovery proceedings in anticipation thereof.

7.      **Payment of Compensation**. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtor or the Committee or affect the right of any party in interest to object to the allowance and payment of such fees and expenses.

8.      **Section 506(c) Claims**. Nothing contained in this Final Order shall be deemed a consent by the Collateral Agent or the Purchasers to any charge, lien,

16

assessment or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise. Upon entry of this Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case or a Successor Case at any time may be charged against the Collateral Agent, the Purchasers or any of their claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

9.    **Collateral Rights**. Unless the Collateral Agent, on behalf of the Purchasers, has provided its prior written consent or unless all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness hereafter described), and all commitments to lend have terminated, the Debtor shall not seek entry, in the Chapter 11 Case, or in a Successor Case, of any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security interest, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is senior or *pari passu* to those granted to the Purchasers and the Collateral Agent pursuant to this Final Order, unless such credit or indebtedness is sufficient to pay all of the DIP Obligations in full in cash.

10.    **Maturity Date**. Unless the Notes are converted into shares of the Series A Preferred in the Series A Preferred Financing, all DIP Obligations are to be repaid in full in cash at the earliest of (i) one (1) year following the Petition Date (the "**Stated Maturity Date**"), (ii) the 45th day after entry of the Interim Order, if the Final Order Entry Date shall not have occurred by such date, (iii) the closing date of a sale of all or substantially all of the assets of the Debtor under Section 363 of the Bankruptcy Code

17

and (iv) the acceleration of the Notes, including, without limitation, as a result of the occurrence of an Event of Default under the Notes (any such date, the "**Maturity Date**").

11.    **Disposition of Collateral**. The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the Collateral Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Collateral Agent or the Purchasers, except pursuant to a further order of this Court), except as provided in the Note Purchase Agreement and this Final Order and approved by the Court to the extent required under applicable bankruptcy law; provided, however, that nothing herein shall prevent the Debtor from making sales in the ordinary course of business to the extent consistent with its prior practice, the contemplated commencement of the commercial phase of the Debtor's operations, including, without limitation, the sale of AngelMed Guardian Systems devices and related activities, and the Budget.

12.    **Events of Default**. The occurrence of an "Event of Default" pursuant to the Note Purchase Agreement shall constitute an event of default under this Final Order, unless expressly waived in writing in accordance with the DIP Documents (collectively, the "**Events of Default**").

13.    **Rights and Remedies Upon Event of Default**.

(a)    Any otherwise applicable automatic stay is hereby modified so that after the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, upon five (5) business day's prior written notice of such occurrence (the "**Remedies Notice Period**"), given to the Debtor and its counsel, counsel for the Committee, if any, and the U.S. Trustee, the Collateral Agent shall be

18

entitled to exercise rights and remedies, for the ratable benefit of the Purchasers, with respect to the Debtor in accordance with the DIP Documents. Nothing in this Final Order shall limit the ability of any party to immediately exercise rights and remedies with respect to any non-Debtor.

(b)    Notwithstanding the preceding paragraph, immediately following the giving of notice by the Collateral Agent of the occurrence of an Event of Default: (i) the Debtor shall continue to deliver and cause the delivery of the proceeds of Collateral to the Purchasers as provided in the Note Purchase Agreement and this Final Order; (ii) the Purchasers shall continue to apply such proceeds in accordance with the provisions of this Final Order and of the Note Purchase Agreement; (iii) the Debtor shall have no right to use any of such proceeds other than towards the satisfaction of the DIP Obligations and the Carve-Out; and (iv) any obligation otherwise imposed on the Purchasers to provide any loan or advance to the Debtor pursuant to the DIP Documents shall immediately be suspended. Following the giving of notice by the Collateral Agent of the occurrence of an Event of Default, the Debtor shall be entitled to an emergency hearing before this Court. If the Debtor does not contest the right of the Collateral Agent to exercise remedies for the ratable benefit of the Purchasers within such five (5) day period, or if an emergency hearing is held that does not result in the Court preventing the Collateral Agent from exercising such rights and remedies, then the automatic stay, as to the Collateral Agent and the Purchasers, shall automatically terminate at the end of the Remedies Notice Period.

(c)    Nothing included herein shall prejudice, impair, or otherwise affect the Collateral Agent's rights to seek any other or supplemental relief in respect of

19

the rights of the Collateral Agent and/or the Purchasers, as provided in the Note Purchase Agreement or otherwise.

14.    **Proofs of Claim**. The Collateral Agent and/or the Purchasers will not be required to file proofs of claim in the Chapter 11 Case.

15.    **Other Rights and Obligations**.

(a)    Good Faith Under Section 364(e) of the Bankruptcy Code. The Purchasers have acted in good faith in connection with negotiating the DIP Documents, and the loans to be made pursuant thereto, and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed, modified amended or vacated by a subsequent order of this or any other Court, the Purchasers are entitled to all of the benefits and protections provided in section 364(e) of the Bankruptcy Code. Any reversal, modification, amendment or vacating of this Final Order shall not affect the validity and enforceability of any advances made pursuant to this Final Order or the liens or priority authorized or created hereby.

(b)    Binding Effect. The provisions of this Final Order shall be binding upon and inure to the benefit of the Purchasers and the Collateral Agents, the Debtor and each of their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in the Chapter 11 Case, in a Successor Case, or upon dismissal of such case.

20

(c)     No Waiver. The failure of the Purchasers and/or the Collateral Agent to seek relief or otherwise exercise their rights and remedies under the DIP Documents, the DIP Facility, this Final Order or otherwise, as applicable, shall not constitute a waiver of the rights of the Purchasers and/or the Collateral Agent hereunder, thereunder, or otherwise. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the Purchasers and/or the Collateral Agent under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Purchasers and/or the Collateral Agent to (i) request conversion of the Chapter 11 Case to a case under Chapter 7, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case, or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan of reorganization or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the Purchasers and/or the Collateral Agent may have pursuant to this Final Order, the DIP Documents, or applicable law. Nothing in this Final Order shall interfere with the rights of any party with respect to any non-Debtor.

(d)     No Third Party Rights. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(e)     No Marshaling. The Purchasers and the Collateral Agent shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

21

10688842/2

(f)    Section 552(b). In light of the agreement of the Purchasers and the Collateral Agent to subordinate their liens and superpriority claims to the Carve-Out, the Purchasers and the Collateral Agent are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply with respect to proceeds, product, offspring or profits of any of the Collateral.

(g)    Amendment. The Debtor, the Purchasers and the Collateral Agent may amend or waive any provision of the DIP Documents, provided that, to the extent such amendment or waiver impairs the Debtor or Collateral or otherwise constitutes a material modification of the DIP Documents, such amendment or waiver must be on notice to the Office of the United States Trustee for the District of Delaware and the Committee (if appointed), each of whom shall have five (5) business days from the date of such notice within which to object in writing to such amendment or waiver. If the Office of the United States Trustee for the District of Delaware or the Committee timely objects to any such amendment or waiver to the DIP Documents, such amendment or waiver shall only be permitted pursuant to an order of this Court.

16.    **Survival of Final Order and Other Matters**. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or a Successor Case, (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Case, (iv) withdrawing the reference of the Chapter 11 Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court. The terms and provisions of this Final Order, including the DIP Protections granted pursuant to this Final

10688842/2

Order and the DIP Documents, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Final Order until all the obligations of the Debtor to the Purchasers and/or the Collateral Agent pursuant to the DIP Documents have been indefeasibly paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Documents which survive such discharge by their terms).

(a)     Inconsistency. In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(b)     Enforceability. This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Final Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

(c)     Objections Overruled. All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled on a final basis.

(d)     No Waivers or Modification of Final Order. The Debtor irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of the Purchasers and the Collateral Agent and no such consent shall be implied by any other action, inaction or acquiescence of the Purchasers and the Collateral Agent.

10688842/2

17.   **Governmental Consents**. Except as otherwise provided herein, the execution, delivery and performance by the Debtor of the DIP Documents and the consummation of the transactions contemplated by the DIP Documents do not and will not require any registration with, consent or approval of, or notice to, or other action to, with or by, any governmental authority.

18.   **Retention of Jurisdiction.**  The Bankruptcy Court has retained and will retain jurisdiction to enforce this Final Order.

Dated: This 23RD day of Jan, 2019.
Wilmington, Delaware

The Honorable Kevin Gross
United States Bankruptcy Judge

24